IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK06-80526 |
| | ) | |
| TASKA, INC., | ) | CH. 7 |
| | ) | |
| Debtor(s). | ) | |

## MEMORANDUM

Trial was held in Omaha, Nebraska, on December 18, 2006, regarding Filing No. 37, Limited Objection to Trustee Abandonment and Request for Order Requiring Debtor to Maintain and Account for Property Removed from Premises, filed by Maxco, L.L.C., and Filing No. 40, Motion for Turnover, filed by Maxco, L.L.C. William Bianco appeared for the debtor and Howard Duncan appeared for Maxco, L.L.C. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(E).

Maxco, L.L.C., a/k/a Maxco II, L.L.C., ("Maxco"), owns a building in Omaha, Nebraska, in which the debtor operated a bar and grill. The debtor filed a Chapter 7 bankruptcy, and shortly thereafter, representatives of the debtor, ("Taska"), representatives of Maxco, and the Chapter 7 trustee met at the premises to discuss which items of personal property and equipment were fixtures which should remain with the premises under the control of Maxco, and which items were personal property which qualified as property of the bankruptcy estate. The trustee also had an auctioneer view the property and give an opinion to the trustee as to whether an auction of any of the property that was eventually determined to be property of the estate would bring any actual cash value to the estate.

The parties did not resolve the issue concerning which property was personal property and therefore property of the bankruptcy estate and which property was a fixture. However, the trustee informed representatives of Taska that he would be abandoning the property because it had no value to the estate and, since Maxco wanted the non-fixture personal property removed from the premises, representatives of Taska were free to remove anything that was not permanently affixed to the real estate.

Taska's representatives took such a suggestion seriously and removed everything from the building that did not appear to be permanently attached.

Representatives of Maxco took great offense at the removal of the property and filed this motion for turnover and objected to the trustee's abandonment procedure. An expedited hearing on the motion for turnover was held and the representatives of Taska were directed to store all of the items removed and insure such items for the benefit of all parties until a final resolution could be made, either by agreement or by court order.

## APPLICABLE LAW

Nebraska statutory law defines real property to include "all buildings, fixtures, and improvements." Neb. Rev. Stat. Ann. § 77-103(2) (LexisNexis 2006). Personal property includes all property other than real property and franchises. Neb. Rev. Stat. Ann. § 77-104 (LexisNexis

2006).

The term "fixtures" is not defined by the statute. However, in <u>Fuel Exploration, Inc. v. Novotny</u>, 221 Neb. 17, 374 N.W.2d 838 (1985), the Supreme Court stated:

> The term "fixture" refers to a chattel which is capable of existing separate and apart from realty but which, by actual annexation and appropriation to the use or purpose of the realty with the intention of making it a permanent accession thereto, becomes part of the realty.
> . . . .
> . . . The intention of the party making the annexation is to be inferred from the nature of the articles affixed, the relation between the parties, the situation of the party making the annexation, . . . and the purpose or use for which the annexation has been made.

221 Neb. at 22-23, 374 N.W.2d at 842-43 (citations omitted). <u>See also</u> <u>DAPEC, Inc. v. Small Bus. Admin. (In re MBA Poultry, L.L.C.)</u>, 291 F.3d 528, 534 (8th Cir. 2002) (under Nebraska law, "[a] fixture is a chattel which is capable of existing separate and apart from a parcel of real property, but which has become a more or less permanent part of the real estate" (citing <u>Pick v. Fordyce Coop. Credit Ass'n</u>, 225 Neb. 714, 408 N.W.2d 248, 255 (1987)) .

The Nebraska Supreme Court has identified three factors to be used to determine if property is a fixture. The factors include: (1) actual annexation to the realty, or something appurtenant thereto, (2) appropriation to the use or purpose of that part of the realty with which it is connected, and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold. <u>T-V Transmission, Inc. v. Pawnee County Bd. of Equalization</u>, 215 Neb. 363, 366, 338 N.W.2d 752, 754 (1983). "The first two factors, annexation and appropriation to the use of the realty, have value primarily as evidence of the owner's intent, which is generally regarded as the most important factor." <u>MBA Poultry</u>, 291 F.3d at 535 (citing <u>N. Natural Gas Co. v. State Bd. of Equalization</u>, 232 Neb. 806, 443 N.W.2d 249, 257 (1989)).

More specifically, the Nebraska Supreme Court has determined that it is possible for an item that is merely bolted down to become a fixture. In <u>Tillotson v. Stephens</u>, 195 Neb. 104, 237 N.W.2d 108 (1975), a grain bin was determined to be a fixture because it was anchored to a concrete base and became an integral part of the grain elevator to which it was connected. In an older case, <u>Oliver v. Lansing</u>, 59 Neb. 219, 80 N.W. 829 (1899), the court determined that opera chairs in a theater were fixtures, where the chairs had been "specially adapted" to the theater and "affixed thereto by screws."  On the other hand, in a more recent case, <u>Federal Land Bank of Omaha v. Swanson</u>, 231 Neb. 868, 438 N.W.2d 765 (1989), the court held that two grain bins were not fixtures because they were merely bolted down to concrete slabs and were capable of being removed without significant difficulty, and the evidence clearly indicated the owner's intention that the bins were personal property and not fixtures . In <u>Northern Natural Gas Co. v. State Bd. of Equalization</u>, 232 Neb. at 818-20, 443 N.W.2d at 257-58, the court suggested that an article is more likely to be a fixture when "removal of the article will injure the realty or will injure the article itself." <u>See also</u> <u>MBA Poultry</u>, 291 F.3d at 536.

The second factor identified by the Nebraska Supreme Court, appropriation to the use or purpose of that part of the realty with which the article is connected, requires a determination of the

relationship between the article and the use which is made of the realty to which the article is attached. It is at least arguable that if the chattel is a necessary or useful adjunct to the realty, then it may be said to have been appropriated to the use or purpose of the realty to which it was affixed. If the chattel is attached for a use which does not enhance the value of the land, it is generally deemed not to become a part of the land. N. Natural Gas, 232 Neb. at 820, 443 N.W.2d at 258. The Nebraska Supreme Court suggests that one needs to look at "the use to which [the chattel] is applied." MBA Poultry, 291 F.3d at 536-37 (citing N. Natural Gas, 232 Neb. at 820-21, 443 N.W.2d at 820-21).

The third, and perhaps most important factor to consider in determining whether a chattel has become a fixture, is the intention of the party making the attachment. As the Nebraska Supreme Court has stated,

> The third factor, the intention to make the article a permanent accession to the freehold, is generally regarded as the most important factor when determining whether an article is a fixture. The other two factors, annexation and appropriation to the use of the realty, have value primarily as evidence of such intention.

N. Natural Gas, 232 Neb. at 817-8, 443 N.W.2d at 257. Further, "the chief test to be considered in determining whether the chattel has been converted into a fixture is the intention of the party making the annexation." Id. at 822, 443 N.W.2d at 259.

## FACTS

Filing No. 60 is a list of the items Maxco claims were improperly removed. Those items include:

1. One (1) Back Bar;
2. One (1) Bar Sink;
3. Two (2) Ice Bins;
4. Two (2) 3-Tap Coolers;
5. One (1) 2 Door Stainless Freezer;
6. Three (3) Video Cameras;
7. Two (2) Sharp TV's;
8. Eight (8) Large Hanging Lights;
9. Five (5) Small Hanging Lights;
10. Four (4) Plexiglas GILLIGAN'S Window Signs;
11. One (1) True Upright Cooler;
12. One (1) Single Door Stainless Steel Refrigerator;
13. One (1) Single Door Stainless Steel Freezer;
14. One (1) 3-Well Kitchen Sink;
15. One (1) Stainless Steel, 4 Burner Stove, with Grill;
16. Two (2) Deep Fryers;
17. One (1) Single Steamer;
18. One (1) Small Refrigerator;
19. One (1) Small Freezer;
20. Two (2) Small Coolers;
21. One (1) 2-Keg Cooler;

    22. One (1) Ice Bin;
    23. One (1) Large TV;
    24. Four (4) Speakers;
    25. One (1) Bar Sink;
    26. One (1) Free-standing Cabinet;
    27. Two (2) Large Hanging Lights;
    28. Eight (8) Small Hanging Lights;
    29. Two (2) Coolers;
    30. One (1) 3-Keg Cooler;
    31. Part of Camera System;
    32. Ten (10) Speakers;
    33. One (1) Stainless $CO_2$ Tank;
    34. Eighteen (18) Neon Signs;
    35. Wire Shelving in Laundry Room;
    36. Wire Shelving in Kitchen; and
    37. Char Broiler

    At trial, photographs of the building and all of its contents, taken prior to the removal of the items in Filing No. 60, were admitted. Representatives of Taska testified concerning most, if not all, of the items, and testified particularly concerning the manner in which the items were attached to the building. The sinks were not built into the building, but were stand-alone and attached to the plumbing. The plumbing was easily disconnected and the photos show no damage to the building as a result of the disconnection. Similarly, the stove with grill was attached to the natural gas and/or electricity by an easily disconnected pipe and unplugging the electrical wire. The stove was not built in or otherwise attached to the building. The coolers and refrigerator and freezer were not built in, but were attached with an electrical cord which was easily unplugged. The Gilligan signs, small hanging lights and large hanging lights, plus the TVs and video cameras, were simply unplugged. The video cameras did not belong to either Taska or Maxco and have been returned to the lessor. The same simple electrical connection was used for the large TV and the speaker system.

    The photographs of the interior of the building, after the removal of all of the property, show no damage whatsoever to the building.

    The witness for Taska testified that one of the "back bars" was left in place because it was attached to the walls and the floor by screws or bolts or some other relatively permanent method.

    It is clear from the photographic evidence that most of the items removed had been connected to the walls by virtue of an electrical cord, a plumbing fixture, or a gas line hook-up. The remainder of the items were freestanding. It is also clear from the photographic evidence that there was no damage caused to the building by the removal of any of the items. All of the items had been placed in the building for use in the operation of a bar by a predecessor in interest to both Taska and Maxco. There is no evidence that any of the items were permanently affixed to the realty. There is no evidence that the party that initially placed the items in the facility intended that they be permanently affixed to the realty.

    This particular dispute is simply one part of ongoing litigation between Taska and Maxco. They have been involved in state court litigation with regard to ownership rights in the building.

Maxco was generally successful in the state court litigation with regard to the ownership question, and planned to begin operating the bar on the premises with all of the personal property intact. That intention of Maxco, however, is not relevant to the question of whether the original owner intended the personal property to become a fixture.

    As the Nebraska Supreme Court stated, and as quoted above:

> The third factor, the intention to make the article a permanent accession to the freehold, is generally regarded as the most important factor when determining whether an article is a fixture. The other two factors, annexation and appropriation to the use of the realty, have value primarily as evidence of such intention.

N. Natural Gas, 232 Neb. at 817-8, 443 N.W.2d at 257.

    The articles were not permanently annexed to the realty and, although appropriate for use in a bar, the articles were appropriate for use in other spaces and other facilities that can use a stove, refrigerators, coolers, TVs and lamps.

## CONCLUSION

    I find that none of the items removed are "fixtures" as that term has been defined in the Nebraska Supreme Court case law, after applying the three factors suggested by such case law. Therefore, the motion for turnover is denied. The trustee's abandonment is approved. The prior order of this court requiring representatives of Taska to preserve and protect the property, including providing insurance coverage for the benefit of all parties, is no longer in effect. The property belongs to Taska.

    Separate order will be entered.

    DATED this 19th day of January ,2007.

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
    William Bianco
    *Howard Duncan
    U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.